PAUL DAVIS, )
)
           Plaintiff, )
)
      v. )     No. 4:05 CV 941 DDN
)
BEMISTON-CARONDELET CORP., d/b/a )
Radisson Hotel Clayton, )
MARCIA HEIDENREICH, )
RNA WHITNAH, and )
PATTY GAFFNEY, )
)
           Defendants. )

## MEMORANDUM

This action is before the court on the motions of plaintiff Paul Davis for remand (Doc. 6) and for a stay of proceedings (Doc. 7), and the motion of defendants Bemiston-Carondelet Corp., Marcia Heidenreich, Rna Whitnah, and Patty Gaffney to dismiss (Doc. 8). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). A hearing on these matters was held on July 22, 2005.

## I. BACKGROUND

Plaintiff filed his original petition with the Circuit Court of St. Louis County on March 14, 2005, against the instant defendants. (Doc. 1, Ex. A.) On April 14, 2005, defendants filed a motion to dismiss the petition. (Doc. 1, Ex. D.) On April 15, 2005, plaintiff filed his first amended petition in the circuit court, and he served a copy of the petition on Bemiston-Carondelet's registered agent on April 16, 2005.[1] (Id.) On May 16, 2005, plaintiff sought leave from the circuit court to file the first amended petition. (Doc. 1, Ex. C.) On May 25, 2005, the circuit court granted leave. (Doc. 1, Ex. D.) On June 10, 2005, defendants removed the action to this court pursuant to 28 U.S.C. § 1441 asserting jurisdiction under 28 U.S.C. § 1331 (federal question).

---

[1]Plaintiff did not serve the first amended petition on defendants Heidenreich, Whitnah, or Gaffney; however, he provided a copy to defense counsel on June 3, 2005. (Doc. 10 at 2.)

The factual predicate forming the basis of the complaint centers around plaintiff's employment beginning May 3, 2001, as a "houseman" at the Radisson Hotel in Clayton, Missouri. (Doc. 1, Ex. A at ¶¶ 15-25.) Plaintiff alleges that he was hired to work Monday through Friday from 8:30 a.m. until 5:30 p.m. (Id. at ¶ 15.) Plaintiff alleges that on August 16, 2004, he was approached by Gaffney to begin working the second shift from 4:00 p.m. until 12:00 a.m. (Id. at ¶ 16.) Plaintiff further alleges that, despite his inability to work the second shift due to personal commitments and a co-worker's expressed desire to begin working the second shift, he was informed by Whitnah that he would be terminated unless he agreed to work the second shift. (Id. at ¶¶ 17-22.) Ultimately, Whitnah fired plaintiff. ( Id. at ¶ 23.)

Plaintiff alleges that on August 27, 2004, Gaffney made him an offer of re-employment; however, the opportunity was conditioned on plaintiff speaking with Whitnah. (Id. at ¶ 24.) Plaintiff allegedly spoke to Whitnah, but Whitnah refused to speak to plaintiff and, subsequently, escorted him off the hotel property. ( Id. at ¶ 25.)

Plaintiff allegedly informed Heidenreich that he believed he was fired on the basis of his race. (Id. at ¶ 22.) On August 31, 2004 he filed a complaint with the Equal Employment Opportunity Commission (EEOC) and the Missouri Commission on Human Rights (MCHR). ( Id. at ¶ 28.) On December 14, 2004, plaintiff received a Notice of Dismissal and Notice of Rights from the EEOC. ( Id. at ¶ 29.) On February 14, 2005, the MCHR administratively closed his case. ( Id. at ¶ 30.)

In his amended petition, plaintiff alleges the following claims: Count I--discrimination based on race in violation of the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §§ 213.010, et seq., against all defendants; Count II--retaliation for filing complaints of racial discrimination in violation of the MHRA against defendants Bemiston-Carondelet, Whitnah and Heidenreich; Count III--discrimination based on race in violation of Title VII, 42 U.S.C. §§ 2000e, et seq., against all defendants; Count IV--retaliation for filing complaints of racial discrimination in violation of Title VII; Count V--failure of defendant Bemiston-Carondolet to issue a service letter in violation of Mo. Rev.

Stat.§ 290.140; and Count VI--common law claim of wrongful termination. (Doc. 1, Ex. B.)

## II. DISCUSSION

### A. Motion to Remand[2]

Plaintiff argues in his motion for remand that the removal of this action from the state court was untimely and, therefore, the action must be remanded. Defendants removed this action, alleging that the court has federal question subject matter jurisdiction under 28 U.S.C. § 1331. Section 1331 provides this court with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand." Arnold v. First Greensboro Home Equity Inc., 327 F. Supp. 2d 1022, 1025 (E.D. Mo. 2004) (internal citations omitted); Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d 619, 625 (8th Cir. 1997), cert. denied, 522 U.S. 1075 (1998).

For the purposes of assessing the merits of the instant motion, the dates of the relevant events are crucial. Plaintiff filed his petition in the circuit court on March 14, 2005. (Doc. 1 at 2, Ex. A.) On April 15, 2005, plaintiff filed a six-count amended petition. ( Id. at 2.) On April 16, 2005, plaintiff served the first amended petition at the home of Bemiston-Carondelet's registered agent. (Doc. 6, Ex. 1.) It was not until May 16, 2005, that plaintiff sought leave of court to file his first amended petition. (Doc. 1, Ex. C.) On May 25, 2005, the

---

[2]Plaintiff filed a motion to stay proceedings contemporaneously with his motion for remand. (Docs. 6, 7.) Upon review of the motion for a stay, the court finds that plaintiff's allegations and arguments in support of a stay do not materially impact the substantive allegations in the motion for remand. Accordingly, the court will address the issue of remand, determining whether it has jurisdiction over the instant cause prior to addressing the merits of the motion for stay. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

circuit court granted plaintiff leave to file his first amended petition. (Id., Ex. D.)

On June 10, 2005, defendants removed the action to this court citing counts III and IV of plaintiff's amended petition, and claims under Title VII, 42 U.S.C. § 2000e, et seq., as a basis for jurisdiction. (Doc. 1 at ¶ 3.) The parties do not expressly argue that these claims fail to form a basis for federal question jurisdiction. Their dispute is whether the time for removal commenced when plaintiff served a copy of the amended petition on Bemiston-Carondelet's agent, or when the circuit court granted plaintiff leave to amend. See 28 U.S.C. § 1446(b) ("The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .").

Essentially, defendants argue that the 30-day removal period did not begin until the court granted plaintiff leave to amend. Under Mo. Sup. Ct. R. 55.33(a), a plaintiff may amend his pleading once before a responsive pleading is served; however, after a responsive pleading is served, "the pleading may be amended only by leave of court or by written consent of the adverse party . . . ." In the case at bar, defendants filed a motion to dismiss on April 14, 2005; therefore, under Rule 55.33, plaintiff was required to seek defendants' permission or leave of court before amending his petition. [3]

In support of his position, plaintiff cites McHugh v. Physicians Health Plan of Greater St. Louis, Inc., 953 F. Supp. 296 (E.D. Mo. 1997). The issue in McHugh, however, was the timing of removal based on defendants' receipt of an initial petition, which does not require leave of court to file. Id. at 297-98. To this end, and as defendants note, McHugh is neither relevant nor instructive.

Similarly, plaintiff cites Webster v. Sunnyside Corp., 836 F. Supp. 629 (S.D. Iowa 1993). In Webster, plaintiff filed his initial petition on February 9, 1993, and filed a request for leave to amend on May 14,

_____

[3]Defendants allege, and plaintiff does not challenge, that plaintiff did not seek their approval for leave to amend.

-4-

1993.  Id. at 630.  Leave was granted on July 8, 1993, and defendants
removed the action on August 5, 1993.  Id.  Acknowledging its minority
position, the district court found that May 14, the date plaintiff
requested leave to amend, was sufficient under 28 U.S.C. § 1446(b) to
put defendants on notice of a potential basis for federal jurisdiction
and to require removal within 30 days from  this date.  Id. 630-31.
Unlike the instant cause, Webster did not decide the issue of whether
the receipt of an amended petition, prior to a request for leave to
amend, is sufficient under the removal statute to trigger the 30-day
removal period.

On its own review, the court did not locate, and neither party
cites, relevant case law of the Eighth Circuit.  The Seventh Circuit,
however, provides persuasive guidance on this issue:

> In a case in which the original complaint does not disclose
> a ground for removal, the defendant must remove the case to
> federal court within thirty days of receiving "a copy of an
> amended pleading, motion, order or other paper from which it
> may first be ascertained that the case is one which is or has
> become removable."  28 U.S.C. § 1446(b).  The defendants
> removed the case within thirty days after the state court
> judge granted the plaintiff's motion to amend the complaint
> to add federal claims but more than thirty days after the
> plaintiff made the motion.  That is too late, according to
> the plaintiff.  We are confident that he is wrong, although
> we cannot find any appellate case law directly on point.
> Until the state judge granted the motion to amend, there was
> no basis for removal.  Until then, the complaint did not
> state a federal claim.  It might never state a claim, since
> the state judge might deny the motion.  The statutory
> language that we quoted speaks of a motion or other paper
> that discloses that the case is or has become removable, not
> that it may sometime in the future become removable if
> something happens, in this case the granting of a motion by
> the state judge.  When the motion was granted, the case first
> became removable, and it was promptly removed. It would be
> fantastic to suppose that the time for removing a case could
> run before the case became removable . . . .

Sullivan v. Conway, 157 F.3d 1092, 1094 (7th Cir. 1998); accord Graphic
Scanning Corp. v. Yampol, 677 F. Supp. 256, 258 (D. Del. 1988) ("Not
until the state court rules on such a motion, and the basis for federal
jurisdiction becomes evident, does the time period for removal
commence."); Schoonover v. W. Am. Ins. Co., 665 F. Supp. 511, 514 (S.D.
Miss. 1987) ("The Court is of the opinion, however, that the motion [for

leave to amend] did not show that the case had become removable, as required by the plain language of 28 U.S.C. § 1446(b), because the state court retained discretion to deny the leave to amend.").

The time for removal should not commence until the court grants leave to amend, if such leave is required. To hold otherwise would ground federal jurisdiction for the exercise of real authority upon the speculation that the state court will grant the motion to amend. Until the amendment is authorized, there is no dispute before the court.

For these reasons, the court finds that defendants timely removed this action. Plaintiff's motion to remand will be denied.

## B.  **Motion to Stay**

On May 17, 2005, plaintiff sought a writ of mandamus with the Circuit Court of Cole County asking the court to declare that the MCHR's closure of his case was wrongful and to order the MCHR to vacate the closure and issue a right to sue letter. (Doc. 7.)  In his motion to stay the proceedings, plaintiff argues that the resolution of this matter bears heavily on the instant suit and that his rights cannot properly be determined until resolution of this issue. ( Id.)

In response, defendants argue that, because plaintiff did not obtain a right-to-sue letter from the MCHR in the first place, the court does not have jurisdiction to issue a stay with respect to plaintiff's MCHR claims. (Doc. 11 at 1-2.) Alternatively, defendants contend that, even if this court has jurisdiction to issue a stay, plaintiff has not made the requisite showing that he is entitled to such an equitable remedy. ( Id. at 3-4.)

"[S]tay[ing] proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Before the court can determine if a stay is warranted, however, it is necessary to determine if, as defendants have suggested, it has the jurisdiction to do so. The court believes it does have jurisdiction to issue a stay.

Faced with a similar question in Vankempen v. McDonnell Douglas Corp., 923 F. Supp. 146 (E.D. Mo. 1996), the court found that receipt

of a notice of right-to-sue, while a condition precedent to filing an MHRA civil action, is not a jurisdictional requirement. Id. at 148-49. In considering how Missouri courts might address this issue, the Eighth Circuit noted "Although we discover no Missouri case on point, we believe that the Missouri courts would consider a right-to-sue letter as a condition precedent, although not a jurisdictional prerequisite to bringing an action under the MHRA . . . . It would, therefore, perhaps have been possible to cure the defect by obtaining a right-to-sue letter after filing the case . . . . " Whitmore v. O'Connor Mgmt., Inc., 156 F.3d 796, 800 (8th Cir. 1998); Jones v. Am. State Bank, 857 F.2d 494, 499 (8th Cir. 1988) ("[F]ailure to obtain a right-to-sue letter prior to the commencement of a suit is a curable defect.").

The court came to its conclusion, in part, by referring to case law analyzing similar issues under federal discrimination statutes, such as Title VII, which have similarly reasoned that a right-to-sue letter is not a jurisdictional requirement. See Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir. 1994) (quoting Lane v. Ground Round, Inc., 775 F. Supp. 1219, 1223 (E.D. Mo. 1991) ("Decisions under the MHRA, however, are guided not only by Missouri law but also by federal employment discrimination decisions which 'are applicable and authoritative under the MHRA.'")); see also Walker v. St. Anthony's Med. Ctr., 881 F.2d 554, 556-57 (8th Cir. 1989) ("[T]he timely filing of a charge with the EEOC is not a jurisdictional requirement . . . ."); accord Hill v. John Chezik Imports, 869 F.2d 1122, 1123-24 (8th Cir. 1989) (90-day time period to file claim under Title VII is not a jurisdictional prerequisite); Muth v. Cobro Corp., 895 F. Supp. 254, 255 (E.D. Mo. 1995) (same).

Having determined the court retains jurisdiction to issue a stay of proceedings, the court turns to the merits of issuing a stay. Upon review of the record, the court finds the instant facts and circumstances do not warrant a stay of all proceedings.

Essentially, plaintiff argues that a stay is warranted because the circuit court's decision regarding his writ of mandamus will "affect the outcome of this current lawsuit . . . ." (Doc. 7 at ¶ 5.) Plaintiff's contention is true, however, only to the extent it relates to whether

Counts I and II (race discrimination and retaliation under the MHRA) are cognizable in this court if plaintiff ultimately does not obtain a right-to-sue letter from the MCHR. The pendency of the writ has no bearing on the court's ability to adjudicate any of the other counts in plaintiff's amended petition, and the interest of justice would not be served by such an order.

Accordingly, the court will grant a stay of proceedings narrowly tailored to encompass only those issues related to the right-to-sue letter in Counts I and II of plaintiff's amended complaint, and only pending the outcome of the petition for a writ of mandamus currently under submission in the Circuit Court of Cole County. In all other respects, the stay does not apply.

## C.    Motion to Dismiss

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint and, in considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004); Holden Farms, Inc. v. Hog Slat, Inc., 347 F.3d 1055, 1059 (8th Cir. 2003). The court need not, however, accord the presumption of truthfulness to any legal conclusions, opinions or deductions, even if they are couched as factual allegations. Silver v. H & R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997).

### 1.    Counts I and II

Defendants argue that Counts I and II (race discrimination and retaliation under the MHRA) should be dismissed because plaintiff did not obtain a right-to-sue letter from the MHRA, which is a condition precedent to filing suit. (Doc. 9 at 3-4.) With respect to defendants

Heidenreich,[4] Whitnah,[5] and Gaffney,[6] defendants assert that the MHRA-based claims should be dismissed because there is no cause of action against individual defendants. (<u>Id.</u> at 4-6.) Moreover, defendants contend that plaintiff failed to exhaust his administrative remedies with

respect to defendant Gaffney. (<u>Id.</u> at 4 n.1.)

Plaintiff responds that the issue of a right-to-sue letter from the MHRA is unsettled while his petition for a writ of mandamus is pending before the circuit court, and therefore, reiterates the necessity of his motion for a stay. (Doc. 12 at 2.) Moreover, plaintiff notes that, under Mo. Rev. Stat. § 213.111(1), he is not allowed to request a right-to-sue letter unless the MHRA has failed to complete its investigation within 180 days from the filing of the complaint. (<u>Id.</u> at 3-4.) In this case, plaintiff alleges the MHRA administratively closed his case 167 days after he filed his complaint; thus, plaintiff never had the opportunity to request a right-to-sue letter. (<u>Id.</u>) Despite these facts, plaintiff alleges his counsel requested a right-to-sue letter from the MHRA in an April 19, 2005, letter to the Executive Director. (<u>Id.</u> at 3.)

With respect to the portion of defendants' motion to dismiss for failure to obtain a right-to-sue letter, the court refers to its discussion regarding the motion to stay, *supra*, and defers addressing this particular issue until a decision is reached on plaintiff's pending petition for a writ of mandamus. However, defendants' arguments that an MHRA claim is not cognizable against individual defendants can be addressed, as it is materially independent of the pending writ.

The Missouri Supreme Court has not yet addressed the issue of whether there is individual liability under the MHRA. In this scenario,

---

[4]Plaintiff alleges Marsha Heidenreich is the Human Resources Manager of the Radisson Hotel in Clayton, Missouri. (Doc. 4, Ex. A-1 at ¶ 12.)

[5]Plaintiff alleges RNA Whitnah is the General Manager for the Radisson Hotel, in Clayton, Missouri. (<u>Id.</u> at ¶ 13.)

[6]Plainitiff alleges that Patty Gaffney was his immediate supervisor. (<u>Id.</u> at ¶ 14.)

the court must attempt to discern "what the highest state court would probably hold were it called upon to decide the issue." <u>Hazen v. Pasley</u>, 768 F.2d 226, 228 (8th Cir. 1985).

To this end, the Eighth Circuit's discussion of the issue is relevant. In <u>Lenhardt v. Basic Inst. of Tech., Inc.</u>, 55 F.3d 377 (8th Cir. 1995), the Eighth Circuit looked to relevant federal statutory schemes (Title VII and the ADEA) noting that the Missouri Supreme Court has considered analogous provisions when interpreting the MHRA. <u>Id.</u> at 379-80; <u>see also</u> <u>Midstate Oil Co. v. Mo. Comm'n on Human Rights</u>, 679 S.W.2d 842, 845-46 (Mo. 1984) (en banc). The court further noted that the definitions of "employer," while not identical, were sufficiently analogous among Title VII, ADEA, and MHRA to provide guidance in its analysis. <u>Id.</u> at 380.

In reviewing its own precedent and that of other circuits, the Eighth Circuit held that:

> Every circuit that has considered the issue ultimately has concluded that an employee, even one possessing supervisory authority, is not an employer upon whom liability can be imposed under Title VII. Thus, we believe the Missouri Supreme Court would hold that the definition of the term employer in the MHRA does not subject employees, including supervisors or managers, to individual liability.

<u>Id.</u> at 381; <u>see</u> <u>Gardner v. 4 U Tech., Inc.</u>, 88 F. Supp. 2d 1005, 1008 (E.D. Mo. 2000); <u>Herrero v. St. Louis Univ. Hosp.</u>, 929 F. Supp. 1260, 1266 (E.D. Mo. 1996); <u>Hill v. St. Louis Univ.</u>, 920 F. Supp. 124 (E.D. Mo. 1996); <u>Griswold v. New Madrid Group Practice</u>, 920 F. Supp. 1046 (E.D. Mo. 1996); <u>cf.</u>, <u>Hill v. Ford Motor Co.</u>, 324 F. Supp. 2d 1028 (E.D. Mo. 2004); <u>Garrett v. Ball Metal Beverage Container Corp.</u>, 2005 WL 465427, slip op, *2 (W.D. Mo. Feb. 24, 2005).

Accordingly, the court finds that, under current precedent, there is no individual liability under the MHRA and the motion of the individual defendants to dismiss is granted. [7]

## 2. <u>Counts III and IV</u>

---

[7]In so holding, the court need not address defendant Gaffney's assertions that plaintiff failed to exhaust administrative remedies against her. (Doc. 9, at 4 n.1.)

Regarding Counts III and IV (race discrimination claims under Title VII against Bemiston-Carondelet), defendants argue that these claims should be dismissed for failure to file suit within 90 days of receiving his right to sue-letter from the EEOC. (Doc. 9 at 7-8.)

Plaintiff counters that while the amended complaint was filed outside the 90 day period, it arises out of the same facts and circumstances as the original petition (filed within 90 days of receiving the right-to-sue letter from the EEOC); therefore, the amended petition relates back to the date of the original pleading and is timely filed. (Doc. 12 at 5-8.)

The parties do not dispute that a claimant obtaining a right-to-sue letter from the EEOC must file his suit within 90 days of receiving the letter. See 29 U.S.C. § 626(e) ("A civil action may be brought under this section . . . against the respondent named in the charge within 90 days after the date of the receipt of such notice."); Anderson v. Unisys Corp., 47 F.3d 302, 309 (8th Cir. 1995). The instant dispute concerns whether the relation back doctrine, in essence, "saves" plaintiff's Title VII claims from dismissal.

Fed. R. Civ. P. 81 provides that, in actions removed to federal court, the federal rules of civil procedure apply only after removal. Fed. R. Civ. P. 81(c) ("These rules apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal."); Norsyn, Inc. v. Desai, 351 F.3d 825, 829 n.4 (8th Cir. 2003); Winkels v. George A. Hormel & Co., 874 F.2d 567, 570 (8th Cir. 1989) ("Federal Rule of Civil Procedure 81(c) provides that the federal rules govern procedure *after* removal from state court.") (emphasis in original); James W. Moore, Fed. Practice and Procedure, § 15.20[5] (3d ed. 2005) (citing McConnell v. Thomson Newspapers, Inc., 802 F. Supp. 1484, 1497 (E.D. Tex. 1992) and Anderson v. Allstate Ins. Co., 630 F.2d 677, 682 (9th Cir. 1980) ("If the amendment request is made before removal, there is good reason to apply state law . . . .")). Accordingly, as plaintiff amended his complaint in the circuit court prior to removal, the court will look to Missouri law on the relation back of amended pleadings.

Mo. Sup. Ct. R. 55.33 provides, in pertinent part:

**Relation Back of Amendments**.  Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Mo. Sup. Ct. R. 55.33(c).[8]  Johnson v. GMAC Mortg. Corp., 162 S.W.3d 110, 117 (Mo. App. 2005) (quoting Mogley v. Fleming, 11 S.W.3d 740, 750 (Mo. App. 1999) ("The language, 'conduct, transaction or occurrence,' as used in Rule 55.33(c), is accorded broad and liberal construction.") (internal citations omitted)).

In support of his position, plaintiff cites Craig v. Mo. Dept. of Health, 80 S.W.3d 457 (Mo. 2002).  In Craig, plaintiff filed a complaint in December 1997 alleging violations of the Americans With Disabilities Act (ADA).  Id. at 458.  In August 1999, plaintiff filed an amended complaint asserting MHRA violations.  Id. at 460-61.  Defendant argued the MHRA claims should be dismissed because they were filed outside the applicable 2-year statute of limitations period.  Id.; see Mo. Rev. Stat. § 213.111(1).

In addressing these claims, the court held:

[Plaintiff]'s MHRA claims arose out of the same conduct as her original ADA claim.  In all of [Plaintiff]'s petitions she alleged the same facts of being denied reasonable accommodations related to her disability and with being harassed and retaliated against for having filed an internal complaint concerning the alleged discrimination. Consequently, the relation back doctrine is applicable, and the date [Plaintiff]'s MHRA claims were added is wholly irrelevant. To the extent the amended complaint corrects the pleadings, the correction "relates back" to the original timely filing, December 5, 1997.

Id. at 461.

Similarly, in Mogley v. Fleming, 11 S.W.3d 740 (Mo. App. 1999), the court looked to the relation back of an amendment adding a claim of fraud.  Id. at 749-50.  Plaintiff filed his original petition alleging

---

[8]The language in the Missouri Rule mirrors that of the Federal Rules of Civil Procedure:  "An amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . ."  Fed. R. Civ. P. 15(c)(2).

that defendant prepared a complaint on his behalf for wrongful termination. Id. at 750. Later, plaintiff amended his complaint adding a count for fraud and alleging that defendant represented that he filed a wrongful termination action in an Illinois court. Id. This amended complaint was filed approximately one month past the statute of limitations period to bring a cause of action for fraud. Id.

The court held that the allegations in the original and amended complaints were sufficiently related so as to constitute arising out of the same "conduct, transaction or occurrence." Ultimately the court held that plaintiff's amended petition related back to the original petition under Mo. Sup. Ct. R. 55.33(c) and, therefore, was timely filed. Id.; see also Johnson, 162 S.W.3d at 118-19 (holding that plaintiff's Truth in Lending Act (TILA) claims filed outside the statute of limitations period related back to his original petition alleging that he received a loan pursuant to "applicable truth in lending laws," but did not plead a TILA violation).

Even though the court applies state law in determining whether the amended petition relates back to the original, federal law may provide helpful guidance, as the federal counterpart, Fed. R. Civ. P. 15(c)(2), is materially identical to Rule 55.33. Cf. Staren v. Am. Nat'l Bank & Trust Co., 529 F.2d 1257, 1263 (7th Cir. 1976) ("It is well settled that the Federal Rules of Civil Procedure are to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits . . . . To this end, amendments pursuant to Rule 15(c) should be freely allowed.").

Plaintiff cites Kaup v. First Bank Sys., Inc., 926 F. Supp. 155 (D. Colo. 1996). In Kaup, plaintiffs sought to add a claim of retaliation under Title VII more than 90 days after receiving her right-to-sue letter for being discharged from employment.[9] Id. at 157. The original complaint contained a claim of violation of Title VII, but not as related to retaliation. Id. The court noted that the initial complaint alleged facts of retaliation, although not specifically that plaintiffs

_____

[9]Plaintiffs claimed they did not file the amended complaint within the 90-day period due to "an illness in the family and other time pressures[.]" Id. at 157.

were discharged, because that had not occurred at the time the original complaint was filed.  Id. at 158.  The court ultimately determined that the amended complaint related back to the original complaint because it stemmed from the same "conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading[.]"  Id. at 159.

The Eighth Circuit had occasion to address these issues in Maegdlin v. Int'l Ass'n of Machinists & Aerospace Workers, 309 F.3d 1051 (8th Cir. 2002).  In Maegdlin, plaintiff filed an original complaint alleging only breach of the duty of fair representation.  Id. at 1052.  More than 90 days after receiving his right-to-sue letter, plaintiff amended his complaint to include claims of gender discrimination in violation of Title VII and the MHRA, which were dismissed as untimely.  Id.

On appeal, the Eighth Circuit found that defendant had fair notice of plaintiff's gender discrimination claims based on the original complaint noting "We think that the substance of [plaintiff's] original complaint, which alleges (albeit generally) that the local union treated [plaintiff] differently, and failed to represent him adequately with regard to his grievances against [defendant], because of his gender, quite obviously states a claim of gender discrimination."  Id. at 1052-53.  Accordingly, the Eighth Circuit held that the asserted Title VII and MHRA claims for gender discrimination related back to the original complaint and, therefore, were timely filed.  Id. at 1053.

After reviewing both petitions, the court finds that the assertions "in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading[.]"  Mo. Sup. Ct. R. 55.33(c).  With the exception of the addition of Counts III-IV, there is no material difference between the two pleadings.  Compare Doc. 1, Ex. A at 1-8 with Doc. 4, Exs. A-1 at 6-10, A-2 at 1-7.  They both relate to the same parties and facts surrounding plaintiff's termination.  (Id. at ¶¶ 1-30; Id., Ex. A-1 at ¶¶ 1-30.)  In fact, Title VII Counts III and IV are substantially identical to their MHRA counterparts in Counts I and II.  (Id. at ¶¶ 31-41; id., Ex. A-2 at ¶¶ 46-60.); see Baker v. John Morrell & Co., 266 F. Supp. 2d 909, 928-29 n.3 (N.D. Iowa 2003) (plaintiff's claims under the Iowa Civil Rights Act (ICRA) related back to he original pleading

alleging violations of Title VII, because the ICRA claims arose out of identical set of facts as her Title VII claims and alleged same theories of discrimination); cf. Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1543 (8th Cir. 1996) ("[R]elation back has been permitted of amendments that change the legal theory of the action."); Hopkins v. Saunders, 199 F.3d 968, 973 (8th Cir. 1999) ("It is the facts well pleaded, not the theory of recovery or legal conclusions, that state a cause of action and put a party on notice."), cert. denied, 531 U.S. 873 (2000) (quoted cases and internal quotations omitted).

In the instant cause, all defendants had notice in the original petition of the alleged facts and circumstances supporting plaintiff's Title VII claims. Cf. Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) ("[A] party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide."); accord Johnson, 162 S.W.3d at 118 (quoting Koerper & Co., Inc. v. Unitel Int'l, Inc., 739 S.W.2d 705, 706 (Mo. banc 1987) ("[The Missouri] supreme court construes relation back liberally and that Rule 55.33(c) is derived from Rule 15(c) of the Federal Rules of Civil Procedure, which 'is based on the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitations are intended to afford.'")).

Defendants argue that plaintiff's failure to file his Title VII claims in the original petition was a purposeful, tactical maneuver designed to specifically avoid federal jurisdiction for which plaintiff should not be rewarded. However, as defendants further acknowledge, it is the plaintiff's purview to decide in what forum to litigate an action. Plaintiff is entitled to "shelter" himself in his chosen forum within the bounds of the law.

Therefore, the court concludes that Counts III and IV relate back to the original petition and were timely filed.

### 3. Count V

Count V alleges a violation of Missouri's service letter statute, Mo. Rev. Stat. § 290.140, directed at Bemiston-Carondelet. Defendant

asserts that this count should be dismissed, because plaintiff did not comply with the statutory requirement to specifically refer to the appropriate statutory authority in making his written request for a service letter, and for failing to address the letter to "the superintendent, manager or registered agent of the Corporation." (Doc. 9 at 8-9, n.3.)

Plaintiff argues that defendants' argument with respect to the service letter refers to matters outside the pleadings and should not properly be considered in light of the motion to dismiss standard. (Doc. 12 at 8-10.) To the extent the court is inclined to convert the motion to one for summary judgment under Fed. R. Civ. P. 56, plaintiff objects. (<u>Id.</u> at 10.) In addressing this issue, the court first must determine if the service letter is a matter outside the pleadings and, if so, if the court may properly convert this motion into one for summary judgment.

"Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or [in] opposition to the motion."[10] <u>Missouri ex rel. Nixon v. Coeur D'Alene Tribe</u>, 164 F.3d 1102, 1107 (8th Cir.) (citation omitted), <u>cert. denied</u>, 527 U.S. 1039 (1999). For example, a court does not convert a motion to dismiss into a motion for summary judgment when it does not rely upon matters outside the pleadings to dismiss a claim, <u>Martin v. Sargent</u>, 780 F.2d 1334, 1336-37 (8th Cir. 1985), or when the court makes clear that it ruled only on the motion to dismiss, <u>Skyberg v. United Food & Commercial Workers Int'l Union</u>, 5 F.3d 297, 302 n.2 (8th Cir. 1993).

In construing what documents are "matters outside the pleadings," "materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint." <u>Morton v. Becker</u>, 793

---

[10]Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

F.2d 185, 187 (8th Cir. 1986); <u>see</u> Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); <u>Abels v. Farmers Commodities Corp.</u>, 259 F.3d 910, 921 (8th Cir. 2001); <u>County of St. Charles v. Mo. Family Health Council</u>, 107 F.3d 682, 685 (8th Cir. 1997). Moreover, in a motion to dismiss under Rule 12(b)(6) "[t]he court may consider, in addition to the pleadings, materials 'embraced by the pleadings' and materials that are part of the public record." <u>In re K-tel Intern., Inc. Sec. Litig.</u>, 300 F.3d 881, 889 (8th Cir. 2002); <u>see also</u> <u>Enervations, Inc. v. Minn. Mining and Mfg. Co.</u>, 380 F.3d 1066, 1069 (8th Cir. 2004) ("Though 'matters outside the pleading' may not be considered in deciding a Rule 12 motion to dismiss, documents 'necessarily embraced by the complaint' are not matters outside the pleading."); <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999) (quoting <u>Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co.</u>, 967 F. Supp. 1148, 1152 (D. Minn. 1997) (in assessing a Rule 12(b)(6) motion to dismiss courts may examine documents "necessarily embraced by the pleadings.")).

In the instant complaint, plaintiff referred to sending defendant a request for a service letter and attached a copy of the certified mail receipt. (Doc. 4, Ex. A-1 at ¶ 26; Ex. A-4 at 5-6.) Moreover, in Count V, plaintiff pleads that he sent a service letter request to defendant, that defendant received the request, and that defendant failed to comply with § 290.140 in response. (<u>Id.</u>, Ex. A-2 at ¶¶ 61-64.) Plaintiff argues that, because he did not attach a copy of his request for a service letter to his amended complaint, any reference to the document automatically converts the motion to one for summary judgment. The court disagrees.

In <u>Silver v. H&R Block, Inc.</u>, 105 F.3d 394 (8th Cir. 1997), the court held that a plaintiff cannot maneuver to avoid a motion to dismiss by simply failing to attach material documents to the complaint. <u>Id.</u> at 397. In <u>Silver</u>, plaintiff brought suit for securities fraud based on several statements he alleged were materially false. <u>Id.</u> at 395. In filing a motion to dismiss, defendant attached the full text of the statements referenced in the plaintiff's complaint. <u>Id.</u> The district court converted the motion to dismiss under 12(b)(6) to one for summary

judgment.  Id. at 397.  On appeal, the Eighth Circuit held that "the district court could have properly considered the complete statements in granting the motion to dismiss.  [Plaintiff's] entire lawsuit is based only on the statements, and he does not dispute their content.  [Plaintiff] cannot defeat a motion to dismiss by choosing not to attach the full statements to the complaint."  Id. (internal citations omitted).

Similarly, the entirety of Count V of plaintiff's complaint rests upon his sending a statutorily compliant service letter request to defendant, and defendant's failure to respond per statute.  Plaintiff even goes so far as to attach receipt of mail delivery.  Clearly, these facts support a determination that the service letter request is a matter embraced by the pleadings.  See Enervations, Inc., 380 F.3d at 1069; In re K-tel Intern., 300 F.3d at 889; Porous Media Corp., 186 F.3d at 1079.  Accordingly, the court finds that it can consider, without converting the motion to dismiss to one for summary judgment, the text of the plaintiff's request for a service letter.

The service letter statutory provision states:

1. Whenever any employee of any corporation doing business in this state . . . who shall have been in the service of said corporation for a period of at least ninety days, shall be discharged . . . who thereafter . . . . not later than one year following the date the employee was discharged . . . , *requests in writing by certified mail to the superintendent, manager or registered agent of said corporation, with specific reference to the statute*, it shall be the duty of the superintendent or manager of said corporation to issue to such employee, within forty-five days after the receipt of such request, a letter . . . setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee was discharged or voluntarily quit such service.

Mo. Rev. Stat. § 290.140(1) (emphasis added); see also § 290.140(2) (prescribing employer shall be liable for compensatory damages for violating § 290.140(1), and compensatory and punitive damages for failing to issue the requested service letter).

The service letter statute was intended to protect certain economic and social interests of the State of Missouri.  In Cheek v. Prudential Ins. Co., 192 S.W. 387 (Mo. 1916) [, aff'd 259 U.S. 530 (1922)], the Missouri Supreme Court held

-18-

that the service letter statute was constitutional. The
Court described the statute as one "enacted for the
protection of the public, and for the benefit of the
employe(e)s of corporations . . . ." Id. at 390. That Court
explained that the state through enacting the statute sought
to assure that a worker's ability to sell his skills to a
potential employer would not be hampered by a previous
employer's refusal to truthfully describe his work history.
The statute also sought to enable potential employers "to
ascertain the degree of . . . intelligence . . . honesty,
capacity and efficiency" of job applicants. Id. at 389.

Rimmer v. Colt Indus. Operating Corp., 656 F.2d 323, 328 (8th Cir.
1981); Ryburn v. Gen. Heating & Cooling, Co., 887 S.W.2d 604, 606 (Mo.
App. 1994) ("The purpose of [§ 290.140] is to discourage corporate
employers from damaging the employability of former employees by
furnishing false or misleading information as to their service or false
reasons for their discharge.").

At least one court has held in favor of an employer when an
employee failed to reference the statutory provision in his request for
a service letter. See Birton v. Wal-Mart, Inc., 209 F. Supp. 2d 993,
999 (E.D. Mo. 2002) (former employee did not make specific reference to
statute in his request for service letter upon termination, and, thus,
was not entitled to such letter under Missouri service letter statute);
cf. Zeman v. V.F. Factory Outlet, Inc., 911 F.2d 107, 109 (8th Cir.
1990) (service letter signed only by employee's attorney is not
sufficient under the statute); Barteau v. Executive Bus. Producs. Inc.,
846 S.W.2d 248, 249-50 (Mo. App. 1993) (employer did not have duty to
supply service letter when request came from employee's lawyer and was
not done pursuant to certified mail).

Moreover, courts have determined that not all requests from former
employees constitute requests for service letters so as to trigger the
rights and responsibilities of § 290.140. See Egloff v. Wilcox Elec.
Co., 694 F.2d 1102, 1103-04 (8th Cir. 1982) (letter from former employee
stating that "since you terminated me without explanation, you may have
some reason why I should not return to work" was not sufficient request
for service letter within meaning of this section); Carr v. Montgomery
Ward & Co., 363 S.W.2d 571, 574 (Mo. 1963) (discharged employee's letter
which in substance asked employer for "a letter of recommendation so

that I might obtain work" did not constitute a request for a service letter).

The failure to make any reference to the relevant statutory provision is fatal to a plaintiff's claim for damages under § 290.140(2). A failure to reference the statutory provision at all does not put the employer on notice that the employee was making a request under § 290.140 and, correspondingly, that its failure to respond pursuant to the statute could expose the employer to liability. The specific reference to the service letter statute limits confusion by clearly detailing what the former employee is requesting, how the former employer should respond, and what liabilities an employer may incur if its response violates § 290.140.

In Callantine v. Staff Builders, Inc., 271 F.3d 1124 (8th Cir. 2001), plaintiff requested a service letter referencing "R.F.MO. 290.140." Id. at 1129 n.1. Defendant stated that it did not recognize R.F.Mo., and that it did not infer that R.F.MO. was meant to refer to the Missouri Revised Statutes. Id. at 1130. The Eighth Circuit, finding that the statutory reference was proper, noted that "[t]he fact that the citation to the Missouri statute contained a minor typographical error does not change our analysis." Id. at 1132.

Plaintiff's letter to Bemiston-Carondelet states: "This is to request a *service letter* pursuant to the revise [sic] statutes on Missouri section to [sic] *209.140* stating the length of my employment the true cause of why my employment was terminated and the nature and charter [sic] of my service you are to response [sic] in 45 days." (Doc. 1, Ex. 1 at 28) (emphasis added). While defendant is correct that the statutory provision is incorrectly cited, it is clear from the document that plaintiff substantially complied with the statutory requirements, and that defendant had adequate notice that plaintiff was requesting a service letter. This is simply not a case, as defendant attempts to characterize, where plaintiff completely failed to comply with a statutory requirement.

Accordingly, the court finds that plaintiff's service letter request, while technically deficient, was a mere typographical error and

materially complied with the spirit and purpose of § 290.140, working no hardship or prejudice to the defendant.

Similarly, defendant's argument that the service letter was misaddressed is without merit. Section 290.140 states that a request for service letter must be sent "to the superintendent, manager or registered agent of said corporation . . . ." Plaintiff's letter is addressed to "Human Resources" (id.), and the certified mail form was addressed to "Human Resources Dept." (Doc. 4, Ex. A-4 at 6.)

In Wuerderman v. J. O. Lively Const. Co., 602 S.W.2d 215 (Mo. App. 1980), the court noted that "superintendent" or "manager" could be construed to include someone who has supervisory or management control over employment and personnel matters. Id. at 219-20; see also Turner v. Emerson Elec. Mfg. Co., 280 S.W.2d 474, 478-79 (Mo. App. 1955) ("It is of course sufficient to direct the request for a service letter to one who has general supervision of all of the activities of the corporation, or to one who performs the duties of a superintendent or manager as to the work, or the department, in which the employee is engaged.") (internal citations omitted).[11]

Accordingly, the court finds that the human resources department would likely have the requisite authority and control over personnel matters to be included under the intent of the statute. See http://www.m-w.com/cgi-bin/dictionary?book=Dictionary&va=human+resources (last visited October 2, 2005) ("Human Resources" is defined as "Personnel," or "a division of an organization concerned with . . . [a] body of persons usually employed (as in a factory, office, or organization)).

For these reasons, defendant's motion to dismiss Count V is denied.

### 4. Count VI

Count VI asserts a claim of wrongful termination. Defendants argue that, as an at-will employee, plaintiff is estopped from asserting a common law claim of wrongful termination when there is a statutory basis

---

[11]Prior statutory language of § 290.140 does not materially differ from the current language for the purposes of the court's discussion.

for redress of the alleged wrong -- in this case, the MHRA and Title VII. (Doc. 9 at 9-10.)

Plaintiff responds that, on the instant facts, it is not untoward for him to bring a common law claim because, the pending writ of mandamus notwithstanding, he is essentially barred from bringing claims under the MHRA. (Doc. 12 at 11.) Thus, this claim is neither duplicative nor unwarranted. ( Id.)

In Missouri, employees not operating under an employment contract are deemed "at will" employees and, accordingly, can generally be discharged with or without cause, and absent employer liability for wrongful termination. Porter v. Reardon Mach. Co., 962 S.W.2d 932, 936 (Mo. App. 1998); Adolphsen v. Hallmark Cards, Inc., 907 S.W.2d 333, 335-36 (Mo. App. 1995); Johnson v. McDonnell Douglas Corp., 745 S.W.2d 661, 662 (Mo. 1988) (en banc). There is, however, an exception to the "at will" employment doctrine prescribing liability when the employee can show his employment was terminated based on a violation of public policy implicated by "statute, regulation based on a statute, or constitutional provision." Johnson, 745 S.W.2d at 661; Dunn v. Enterprise Rent-A-Car Co., --- S.W.3d ----, 2005 WL 831599 at *4 (Mo. App. Apr. 12, 2005).

Missouri's "public policy" exception for at-will employees has long been recognized in this circuit. Skinner v. Maritz, Inc., 253 F.3d 337, 342 (8th Cir. 2001); Saffels v. Rice, 40 F.3d 1546, 1550 (8th Cir. 1994); Kosulandich v. Survival Technology, Inc., 997 F.2d 431, 432 (8th Cir. 1993). Moreover, the district courts have had occasion to address the merits of actions factually similar to the instant cause. In each case, the court has found that wrongful termination claims of violations of public policy based on statutory provisions containing remedial provisions are "duplicative and unwarranted." Gannon v. Sherwood Med. Co., 749 F. Supp. 979, 981 (E.D. Mo. 1990) ("Because each of the statutes on which plaintiff relies contains a remedial provision, the Court concludes that plaintiff's claim for recovery based on the violation of a public policy evinced by *both* statutes is duplicative and unwarranted.") (emphasis in original); see Kramer v. St. Louis Reg'l Health Care Corp., 758 F. Supp. 1317, 1318-19 (E.D. Mo. 1991) (quoting Gannon, 749 F. Supp. at 981 (same)); see also Nichols v. Am. Nat'l Ins.

<u>Co.</u>, 945 F. Supp. 1242, 1246 (E.D. Mo. 1996) ("[B]ecause the statute upon which Plaintiff relies, <u>i.e.</u>, Title VII, contains a comprehensive remedial provision, the Court concludes that allowing Plaintiff's claim for wrongful discharge based on a violation of public policy evinced by such statute would be duplicative and unwarranted."); <u>Osborn v. Prof. Serv. Indus. Inc.</u>, 872 F. Supp. 679, 681 (W.D. Mo. 1994) ("In order to survive a motion to dismiss, a claim of wrongful termination based on the public policy exception must be based on a policy which has no remedy in any statute, regulation, or constitutional provision.").

The parties do not dispute that plaintiff was an "at will" employee. Moreover, Davis bases his wrongful termination claim on violations related to Title VII and the MHRA, both of which contain remedial provisions. <u>See</u> 42 U.S.C. § 2000e-5(g); Mo. Rev. Stat. § 213.111(2).

In keeping with relevant precedent, the court finds that plaintiff cannot maintain a cognizable claim of wrongful termination on the instant facts and circumstances. The court disagrees with plaintiff's argument that he should be able to claim wrongful termination in the alternative. <u>See</u> <u>Osborn</u>, 872 F. Supp. at 681 (plaintiff argued that wrongful termination claim was pled in the alternative to Age Discrimination Employment Act claim; court held that "In order to be an alternative theory, plaintiff must be able to show that she could recover under the public policy claim even if she is unable to fully satisfy the requirements for recovery under the ADEA. . . . . Because plaintiff could not prove that a remedy does not exist for her claim of wrongful termination on the basis of age, she cannot show that she could recover [for wrongful termination]) (internal citations omitted); <u>Gannon</u>, 749 F. Supp. at 980-81; <u>Kramer</u>, 758 F. Supp. at 1318-19.

Therefore, Count VI is dismissed.

Summarizing, plaintiff's motion for remand is denied; plaintiff's motion for stay is granted in part; and defendants' motion to dismiss

is granted with respect to Counts I and II (individual defendants), and Count VI, and denied with respect to Counts III-V.  An appropriate Order is issued herewith.


**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on October 4, 2005.